Good morning, and may it please the court, Jia Kim, appearing on behalf of Appellant Steven Wang. I'd like to reserve three minutes of time for rebuttal. Okay, we'll try to help you, but keep your eye on the clock, please. Thank you. Mr. Wang raised a number of sentencing challenges in his briefs. I'd like to focus on two of them today. One, at the front end of the sentencing involved the selection of the General Fraud Guideline, rather than the more specific Visa Fraud Guideline, as the applicable guideline for the mail fraud count of conviction. The second, at the back end, and the issue that I'm going to start with, is the District Court's failure to calculate what the guidelines call the total punishment applicable to both cases, which resulted essentially in an unwarranted consecutive sentencing and effectively doubling his sentence. Can I ask you this, Counsel? On the cross-reference issue, that was not mentioned below, was it? No, it was not. It was brought up for the first time on appeal. Why the delay if that was such an important issue? I'm not certain, Your Honor. I was not trial counsel. Trial counsel did not raise that argument below. There were two probation officers in these cases. Neither of them mentioned, as you can see in the sentencing transcript, they've jumped straight to, well, this is, I've looked in the appendix, this goes to the fraud guideline. Now, we believe that, we've made an argument for why this court's review may be de novo, because, as the en banc court explained in Gasca Ruiz, the selection of the guideline is the selection of the legal standard that governs, here there are multiple counts, but at least governs that aspect of the case. With respect, since it was not raised below, is there any reason why we shouldn't treat this or review it for plain error? We have also argued that it meets this plain error standard. Why? Where's the prejudice? The prejudice is that the offense level calculation under the fraud guideline is significantly higher than under the visa fraud guideline. The fraud guideline, as I'm sure this court knows, is driven in large part, there are a number of enhancements, but in large part by loss amount. And that, this was a very long sentencing that occupied a lot of the court's time. The visa, what I'm calling the visa fraud guideline, it applies more broadly than that, but 2L2.1 starts at a base level of 11, and it doesn't go by loss amount, because as this court mentioned in Velez, which we believe is the case that makes this plain error, and the 11th circuit discussed in the Kuku case, K-U, K-U, it's hard to, in those cases, and here this was charged as a scheme to defraud the U.S. of and concerning visas. The U.S. is the victim in that case. It's hard to conceive of loss in monetary amounts, and there was no effort to do that here. Therefore, the district court turned to the alternative measure of gain, which the guidelines say only to use if there is a loss, but it can't be determined. Now, that doesn't usually come up in this sort of situation, and because here the loss appeared to be to the U.S., but the gain was not really commensurate with that loss. And... Are you convinced that the district court would have really done anything differently in the sentencing, such as the six-level downward departure, if you had followed the cross-reference guideline that you're asking us to do now? I believe so, Your Honor. I believe because these counts were grouped that, and the fraud guideline was the highest by far of all of them, that sort of drove the rest of the sentencing, including on the second case. And I think it does, in one sense, go hand-in-hand with the other error, which is the consecutive sentencing, because by being much higher at level 29 or 31, depending on whose view you take, as opposed to level 20, say, it did affect the guideline range that we submit, the district court applied to each case, 46 to 57, rather than to both cases combined. So there is an argument, and I've calculated it, that under the visa fraud guideline it may be 27 to 33, rather than 46 to 57, which is itself a significant difference. But I think perhaps a bigger error here was the grouping of the counts, and then sort of breaking the cases apart at the end, as if they hadn't been grouped. And you're convinced that if we were to follow your request, your recommendation, that the consecutive sentencing would not occur? I don't believe it would be consecutive. I'm not saying the district court couldn't arrive at the place where it got, which was 114 months, and I think it's significant that it never said, my sentence is 114 months. But the statements of reason show it understood itself to be imposing a below-guideline sentence, from 87 to 108, that is the pre-departure, the pre-six level range. And if it had realized, no, actually I just imposed a sentence of 114 months, rather than 57 and 57, I think given the Supreme Court's statements that the guidelines, while advisory, are still the anchor, the starting point, the benchmark, it's very important to the district court to know that, no, this is actually an above-guideline sentence, not as it conceived of it, as a below-guideline sentence. Do you think district court, in effect, almost surprised itself by finding that it had two different offenses that had long sentences, and felt they had to tie them in tandem, in effect? Yes, Your Honor, because I think, another way of looking at the prejudice, if the second case, if that had been sentenced the next day, and separately, the second case is relatively minor compared to the first case, I think it was agreed, if that case had been sentenced on its own, which would have been permissible to do, but you don't group them, the range for that case would have been eight to 14 months, instead of, here, it was grouped, so it got 46 to 57, but it didn't get the benefit of being included in the final grouping. Your understanding of 5G 1.2D, I guess that's the sentencing guidelines provision we're talking about, your understanding is that district court would invoke it to impose a consecutive sentence, only if there's not enough room, with respect to the statutory maximum, to get to the sentence that the court wants to? Yes, Your Honor, and I believe, I think the first thing it has to do is figure out what is the total punishment, so here, it never said the total punishment is 114, though that is the total punishment imposed in both cases, so either you can group them and go, you know, sentence them together, or you could split them apart, and then consider the first case and the second case separately. I thought that the way that provision worked, though, is that, let's say the court really did think that 114 months was the correct total sentence, and let's say that the court explained why that was, you know, departing from the guidelines upward to get to that number was proper. Under that provision of the guidelines, isn't the court then supposed to give 114 months across all the counts that can take that sentence and impose it concurrently? Yes, I believe that, so, though in this case, the count in the second case has a 60-month statutory maximum. So then you just give 60 as to that, but you run all the sentences concurrently. Yes, that's my understanding of that, and there is some allusion to this issue, I think ER 804 and 805, where there's a point at the end where the court says, actually, I want to sentence this under the statute, and isn't that 60 months, and then goes back to 57 months, so there is some allusion to that problem, but I don't think it was dealt with head-on, and I think it's clear, and I don't think the government said otherwise, that the district court did not calculate the total punishment, and I think that, in this case, Mr. Wong was prejudiced by it, given the recommendations, both of the parties and probation, that had the district court realized both, leaving aside even the guideline selection, that this range applies to both counts, all counts in both cases, not all counts in each case, that there is a reasonable probability of a different sentence. Do you want to save the rest of your time? Yes, Your Honor, thank you. Good morning. Good morning. May it please the court, Stephen Leon Guerrero, and I'm an assistant U.S. attorney in the District of Guam. Your Honor, the lower court's application of the general fraud guideline 2B1.1 for the male fraud conviction was not plainly erroneous, and the lower court properly exercised its discretion in sentencing the appellant to a consecutive sentence, and therefore, this court should affirm the sentence that was given. Counsel, to some degree, this kind of goes back to the issues of just general construction that many of our colleagues in the audience will have dealt with, and that is that the 1B1.1C3 is more specific and narrower than the language in 1B1.5, right? Well, Your Honor, with respect to the cross-reference that Your Honor has cited, it's the government's position that the reference to conduct is ambiguous, and it's arguably broad, and I say that... Well, if that's true, wouldn't that be even more important to go to the specific... The commentary was designed to apply to a narrow set of facts. You've gone to... The court went to the broader set of facts, understandably, to some degree, but in this case, don't we have a fairly simple construction issue of the specific governing the general? Well, Your Honor, if it was a simple visa fraud case and false statements that were submitted to immigration, similar to the United States' Pete Velez case, I'd say yes. But that's not the case in the opponents' matter. And I say that because, and I'm referring to ER 78 to 113, this is a case that not only dealt with mail fraud and visa fraud, but we're talking about 62 counts of harboring an illegal alien, 30 counts of money laundering, four counts of tax evasion. So it's one thing if visa fraud and submitting false applications was pretty much the nature of the case, but it wasn't. And we'd also submit that, unlike Velez, which the defense relies on, what's also different is the government, in this case, is not the only victim. I point Your Honor's direction to ER 525, where the court identified these former Washington employees as victims. Well, they're not victims, though, of the visa fraud offense, right? They're the beneficiaries, to some extent, of the fraud that was perpetrated on the U.S. government. Well, I would respectfully disagree to a point, Your Honor, and I say that because it was the appellant that brought these workers from China into Guam to work. They received an H-2B visa, and they were able to work. But it's also the conduct at Onguam. But that's what I'm saying. That's separate, though, from the visa fraud is committed, I assume, by the representations that were made to the U.S. government. And so once, I agree with you, there was a lot of harm that occurred after that. But in terms of that particular offense, it seems like the U.S. government is the only victim. Well, I would submit, Your Honor, in ER 525, the court identified these workers as victims, and the defense didn't object to that. And they identified them as victims because these were individuals that the court identified as being treated as slaves. And I'm referring to ER 787-797. But why wouldn't the more proper approach, then, be for the district court to say, the guidelines seem to tell me to apply the visa fraud where it's pegged to the number of fraudulent to punish the defendant here, precisely because this is not the run-of-the-mill visa fraud case. So therefore, I'm going to depart upward. Why wouldn't that be the more appropriate approach, rather than try to, because didn't you have to go through a day-long hearing to figure out what the loss number was? Yes, Your Honor. There was a lengthy discussion on trying to establish the unpaid wages that had been owed to these employees. But I would submit, too, that at the same time, there was a figure, and I believe it's over $400,000, where it was found that the appellant was able to gain by taking out from room and board from these employees that had flown from China. So, although it was a lengthy discussion that occurred, there was an ultimate figure that was able to, that we were able to arrive at. Counsel, looking at this from a slightly different angle, it almost seems like you're arguing that if there's a multi-count indictment plea agreement, it'll always render 2B1.1C3's cross-reference, or need any cross-reference, inapplicable. Is that an incorrect understanding? Well, Your Honor, I would say that, not necessarily. It's more, given the nature of this particular case, the nature, and I pointed out the numerous offenses, counts, that the appellant engaged in, it's the government's position that a case like this would be more appropriate to remain in 2B1.1. And I get your point, that the facts of the case are serious, very serious. But it sounds like you're saying that our construction of the guideline depends on the fact rather than what they intended the cross-reference to do. Cross-reference doesn't seem to tie into what the facts are, in the sense that if you've got a really serious case, you apply it or not apply it, as the case may be. And it seems like you're saying if you've got multi-count indictment, serious offenses, that the cross-reference simply doesn't apply. Is that correct? Your Honor, I'd say it wouldn't necessarily apply. I think it is fact-driven in the cases. Well, how bad does the case have to be before the cross-reference doesn't apply anymore? I would say that the current case... So this is the benchmark? Yes, I'd say a case... All the other cases, it applies? A case similar to the nature of this case, given the numerous offenses, the numerous counts, the individual... How many counts does there have to be before it doesn't apply? I don't think there's a specific... And I guess that's the thing, Your Honor. And you bring up a good point, but it's the government's position that if the language of the cross-reference is arguably broad and it's debatable, then it's the government's position that the facts of a particular case would have to... You have to cabin it some way, don't you? You have to cabin the application of the rule that you're proposing. I mean, here you've got Abel Counsel on the other side, and she's saying, this is just wrong. This guy's got sentenced for way, way, way more than he should have. And part of the problem is that it didn't follow the cross-reference, which was more attuned to what the charges were here. And you're saying, well, that may be true in some cases, but in this case, look at the horrible thing this person did. All these counts, and therefore, we're not going to follow the cross-reference. Isn't that what you're saying? I'm saying, Your Honor, for this particular case, if it is... If it can be... If it's debatable, I guess, with respect to the language of conduct that's referenced in the cross... That's mentioned in the cross-reference, that it would be fact-driven, and whether or not the cross-reference should apply to a particular case or not. Anything on the commentary that suggests that you're right? Or they say, well, if it's a really bad case, forget what we just said. There's nothing specifically that kind of goes in line with that, Your Honor. Can you turn... Your time is ticking down. Can you turn to the consecutive versus concurrent sentences? Yes, Your Honor. Thank you. Your Honor, with respect to that particular issue, it's the government's position that the lower court did not abuse its discretion in imposing a consecutive sentence for the appellant. And first and foremost, we would move to withdraw our argument with respect to 18 U.S.C. 3147. Good. After reviewing the appellant's reply, and after further consideration, we move to withdraw that argument. I think that's wise. Yes, Your Honor. So let's just focus on the language, then, of the 5G 1.2. Because I, frankly, looking at this, don't see how you can defend what the district court did here. Yes. The language of the way the sentencing guideline provision tells the district court to go through the analysis seems to be completely at odds with what the district court did here. Yes, Your Honor. And we do acknowledge that 5G 1.2 applies, and we also acknowledge it wasn't specifically addressed during the lower court. However, we say it's not, we submit that the court still didn't abuse its discretion because it still had the ability to impose a consecutive sentence under 18 U.S.C. Section 3584. And under that particular statute, and we're not saying the sentencing guidelines don't apply. But did the court ever determine the total punishment? We'd say that the government's position is the court did, Your Honor. Okay. But if the court was then going to say, as I was positing to your opponent, that I think the total punishment should be 114 months, right? The court would then need to justify why it was departing upward from the high end of the applicable guideline range, basically doubling that to get to 114. The court never provided any explanation for that, did it? Your Honor, I'd say that the court did. And I'm referring to ER 795 to 799. The court indicated that the appellant committed the second case while he was pending the first case. The fact that he treated his employees like slaves and that they performed very hard, they weren't receiving the prevailing wages that they were entitled to receive, and that they were living in substandard living conditions. So it is something that the court put on the record. And the court therefore said, and I'm going to grant an upward departure of I don't even know how many levels it would take to get to 114. Because I just don't remember any analysis framed in those terms. And that is, it seems to me, what the guidelines would require here. Yes. I think your time's up. If you can answer Judge Washer's question, then we'll move on. Yes, Your Honor. Thank you. I don't recall specifically that the court mentioning that it was going to seek an upward departure with respect to the appellant's sentence. What the court did do was indicate that she was going to impose 57 months for each particular case, that it was going to be imposed consecutively, and that she gave the reasons for consecutive sentences. Thank you, Your Honor. Thank you, counsel. So both counsel have a rebuttal time. Thank you. So going back to the guideline selection question and the question of what you look at when selecting the guidelines. The sentencing guidelines in general in 1B1.2 as confirmed by this court's decision in McHenry, when you're selecting a guidelines, you always look at the offense conduct charge in the indictment. You don't look at relevant conduct. And there are other circumstances in this case that a district court may well have found aggravating. But when you're making that initial selection of the legal standard, it goes by the indictment. And here, the indictment at ER 87 and the government sentencing position papers at ER 343, 360, and the government said at sentencing that the substance of the mail fraud counts, and this is at ER 565, is the petitions, you know, the petitions he mailed to the U.S. citizenship and immigration. And as far as what is charged in the indictment, it is a scheme to defraud the U.S. And if there are no other further questions. Thank you both for your argument. We appreciate it. The case just argued is submitted. And we will now hear argument in the case of United States v. Iguchi.
judges: Graber, M. Smith, Watford